22994. Good afternoon, your honors. My name is Jeremiah Donovan. Hold on one second. Okay, please proceed. Afternoon, your honors. My name is Jeremiah Donovan. I was not counseled below. I tell my students in trial practice that nothing that they do in real life will ever be as embarrassing as some of the things that they do in court. And this, I think, is a good example of it. Defense counsel submitted a sentencing memorandum in which he described a case that he thought was pending against the defendant and said that the defendant absolutely denied that he had anything to do with the sexual abuse of this child and that he was counting on the ordinary processes of the criminal justice system to exonerate him, that he had never committed a crime in which there was an identifiable victim or a crime of violence, only to find out that four months prior, three months I think, prior to the submission of the sentencing memorandum, the defendant had pleaded guilty to a lesser included offense and that apparently came as a great surprise just before sentencing to defense counsel. And I claim that was incompetent assistance. But counsel, can you explain to me what good it would do even if we agreed with you that there was a duty? What anything we do can make any difference. I mean, let's assume we say that. Let's assume there was a federal court sent the sentence on. So how is anything that we do make any difference? Why is this a case that is a real case before us? Well, in some ways you're absolutely right, Judge, but in other ways you're not right. And here's why. Okay, explain to me where I'm not. Where I'm right, I always know already. Imagine, imagine, imagine that you're the defense counsel in this case and you know that he's pled. Well, first of all, that's another big question is defense counsel didn't work the state case. I'm not arguing about whether, I'm assuming for the moment, which I'm not sure is right, that defense counsel did something that was wrong. But even if we agree, how does that make any difference in the actual case? So what I'm saying is if you had been defense counsel, there were a whole bunch of things that you would have done that might have resulted in a lesser sentence. Remember the defense counsel said, well, this was a kid who was always making, who had made claims against other family members. You would have gotten an affidavit from other family members saying, hey, this is a kid who often makes false claims. You would have tried to get the investigative, you would try to get, I think you would have tried to get before the court the investigative reports or at least something that indicated to the federal sentencing judge why it was that the state prosecutors let him plead to for an offense that seems really heinous. So I think there were all kinds of things. But the federal court can't now do anything about the state sentencing. And so to the extent that that is what is basing that, what? That somehow the federal court would give a different sentence? Yeah, I think there's two things contained in your honest question. The first is, would the sentencing guidelines change? No. I mean, the conviction is the conviction. It drives up the offense level by two levels in one. So now he's in the criminal history category four instead of three. But also contained within that is the fact that the judge could have varied, could have, Judge Seibel was very, I don't want to say clever, because it kind of diminishes what she did. But she sentences him right at the intersection of the plea agreement calculation of the guidelines and the amended calculation of the guidelines when we add in the two points for the added conviction. But she might have departed down, I mean, you know, what we've got here is, you know, some guy from Ecuador who grew up in terrible, terrible circumstances who keeps coming back into the United States and he's a drunk. And I don't mean to diminish it, but, you know, he gets arrested, I think, three times for, two of them are alcohol related, one of them looks like it's alcohol related. And, you know, and he's going to get deported. So could she have downwardly departed if she was? She's as mystified by this as I am in answering your questions. You can see in the transcript how mystified she is. She says, I just don't, now my sister suggests that if the full facts of the case were in front of her, she would have sentenced him to something higher. And that may well be. And in fact, when she imposes a sentence, she says that she's, you know, she just doesn't know what to do with this conviction. And had you been defense counsel, you could have done something with that. So you're assigning, you're saying that this is not about the withdrawal of a plea. This is actually about just the sentencing. Yeah, this is about, no. As a substantive matter. Right. I'm saying that counsel was incompetent at sentencing. And, you know, I think of my own cases. I mean, what makes this case a little bit more complicated, I don't mean to hurt my argument, but what makes it more complicated is what was Romero doing? Why wasn't Romero telling him, hey, you're submitting this sentencing memorandum. I pled guilty three months ago. I think my only explanation for that is that, you know, you notice that Judge Seibel made sure that the pre-sentence report had been translated for him. Here's another potential, I don't know if it's a problem per se, but an issue, which is that, as you mentioned, we don't know what the communications were between your client and defense counsel. Nor do we know, by the way, what defense counsel may or may not have been thinking in connection with determining this state, underlying state conviction. Right. So usually under those circumstances, we would say, file a 2255 petition. Right. And proceed that way. Why, subject to your colloquy with Judge Calabresi, why wouldn't that be a preferable, in fact, the only real course? Yeah. And if it were a sentence in which the defendant had received 10, 15, 20 years, I'd find it hard to disagree with your honor. By the time he files a 2255 petition, he'll be back in Ecuador. So, I mean, that's one reason. But I think the other reason is, you're right, the record isn't, the record leaves me mystified, leaves you mystified, leaves Judge Seibel mystified. But I do claim that it's sufficient for you, for your honors to decide. So I have a little time reserved. I'll be back again to argue. Oh, can I just, I'm sorry. So what I was about to say was about myself. You know, I wonder to myself, when I try cases, and I just believe everything the defendants tell me, and oftentimes that results in you being really embarrassed in court. I tried cases in front of Judge Cabranes, in which I have done that. That is embarrassing me. Is that incompetence? I always say, have I been incompetent? Any other defense lawyer would have looked at this and said, hey, I'm not going to believe this at all. And that's the situation we have here. So you deserve some time for rebuttal. We'll hear from the governor. Your Honor. Your Honor, and may it please the court. My name is Stephanie Simon. I'm an assistant United States attorney for the Southern District of New York. I represent the United States on appeal, as I did before the district court. This court should reject Romero's ineffective assistance of counsel claim because the record is clear that Romero cannot show either prong of the Strickland test. Romero cannot show that his lawyer's performance was deficient for the simple reason that Romero knew about his own guilty plea and sentence in a state case, but did not share that information with his federal defense attorney. How do we know that he didn't share that information? Because Mr. Romero admits in his own brief before this court that he didn't share that information with his federal defense attorney. And I believe it's clear from the sentencing proceeding that Mr. Romero's counsel below said at least when he filed the sentencing submission, he didn't know about that fact, and for that reason he stated that Mr. Romero vehemently denied his guilt on the state case. But even that didn't cause Mr. Romero to share the fact that he had in fact pled guilty and was sentenced in that case. But his counsel obviously knew about the plea and sentence by the time of the sentencing proceeding in this case and was able to advocate on Mr. Romero's behalf. Do we know if counsel asked Mr. Romero about his prior criminal record at all? I'm not sure whether the... Did he say anything in the record about that? About whether he asked Mr. Romero about his criminal record? I don't think that's clear from the record before the court except for the fact that there was the pre-sentence report that was prepared by the probation department that details at length Mr. Romero's criminal record. And of course because Mr. Romero was accused and then pled guilty in this case to illegally re-entering the United States following a felony conviction, his prior felony convictions were detailed in the complaint that was filed by my office as well as in the pre-sentence report. And then it details of course the four felony convictions for drunk driving related offenses in New York during Mr. Romero's prior illegal stints in the United States. But to return to the question of prejudice, the record was clear as I was saying that Mr. Romero's counsel was able to advocate on his behalf at the sentencing proceeding and argued that despite the fact that Mr. Romero had pled guilty and was sentenced in state court for sexually abusing his daughter, he hadn't done that because he had in fact committed the offense but for some other reason including because he had been promised no additional jail time. And the record reflects that Judge Seibel accepted that. She said, I'm not going to give the sentence I would give if I were positive Mr. Manolo Romero abused his daughter. If we were to agree with the other side that counsel should have done something and that is the only comment by the district judge, would it be appropriate for us to have a Jacobson remand and actually ask the judge whether she would have done the same thing had that not been there? No, because it's Mr. Romero's burden to show both prongs of the Strickland test. He must show that his attorney's conduct was deficient, meaning it fell below an objective standard of reasonableness. And he must also affirmatively show prejudice. So even absent that comment from the district court, Mr. Romero can't affirmatively show prejudice given all the other statements of the district court. Judge Seibel made clear that the sentence that she was imposing was based on several of the 3553A factors. Chief among them, deterrence. The need to deter Mr. Romero from illegally reentering the country and driving drunk, as he had done several prior times. Not to deter Mr. Romero from engaging in sexual offenses. In addition, Judge Seibel mentioned the need to promote respect for the rule of law and the need to protect the public from future crimes of Mr. Romero. Again, not sexual offenses, but from driving drunk. On that record, Mr. Romero cannot affirmatively show prejudice. And so there's no need for a remand in this case. In addition, as Your Honor was touching on in your questions, a remand in this case would make absolutely no difference. Mr. Romero, as my adversary concedes, has already pled guilty and was sentenced in a state case. The guidelines would still be the same. They would be 57 to 71 months imprisonment. The arguments that would be available to a new defense counsel would be exactly the same. Again, the arguments that Judge Seibel appeared to accept. And for that reason, there's no reasonable probability that Mr. Romero would have received a lower sentence. And for that reason- Is that enough of a reason not to send this to a habeas proceeding? Yes. Because there's a lot of unknowns. I mean, you're saying categorically that it's clear enough, at least on the prejudice prong, that there's no prejudice and no possibility of a different sentence. Well, where the record is sufficient to show that the defendant can't meet either prong or both prongs of the Strickland test, this court can and should decide claim of ineffective assistance of counsel on direct appeal. A panel of this court less than two weeks ago in United States v. Fletcher, and that's case number 22-2994, decided a claim of ineffective assistance of counsel on direct appeal. And the court mentioned where the defendant on direct appeal is represented by a new lawyer, so not the lawyer that provided the allegedly ineffective assistance of counsel, and where he doesn't raise any claim that's not fully developed in the factual record, this court can and should decide the claim on direct appeal. What I'm suggesting is that at least with respect to the ineffective assistance prong, there is some part of the factual record that's not fully developed because we don't have a response from the defense counsel. So you're relying on the prejudice prong. Well, I think actually the record is clear on deficient performance. I'm happy to address that in a moment. But because it's the defendant's burden to meet both prongs, either is independently sufficient to defeat the claim if he can't meet his burden. So in Fletcher, the court found that there actually was an open question on deficient performance and said we can't resolve that claim on direct appeal because there's open factual questions. But as to prejudice, the court found that the record was sufficient to show that the defendant couldn't meet his burden of showing affirmative prejudice, meaning a reasonable probability that but for the error, he would have received, there would have been a different outcome. In that case, the alleged deficiency was in connection with- I am sometimes puzzled by why the government wishes to have these cases on inefficiency decided on direct appeal. Because granting a habeas in a situation where if you are right, there is really nothing to it, doesn't help a defendant. They have to use up their one habeas on something which you say is of no use at all. So I'm not altogether sure why the government argues so vehemently that we shouldn't do that. Mr. Romero has brought this appeal. The question is before the district court. I'm not saying it isn't before us, but I just wonder. Well, the government's view is that the record is sufficient to decide this claim and that that would save resources of both the government and the district court in a future case. Ms. Simon, the previous attorney who is allegedly ineffective, was he informed of this claim here? Did someone tell him at some point that his representation of this defendant was ineffective? I can't answer that question for sure. What I do know is that a notice of appeal was filed on the docket in the district court case. He was the attorney of record in the district court case, so I believe he at least received notification that the appeal was filed, but of course I can't speak to any communications that were had with him specifically. Would that have given him or her an indication of what was being said about his representation? I believe only if he consulted the appeal brief that was ultimately filed. Thank you very much. Thank you, Your Honor. Mr. Donovan. You've got to get to the microphone. I guess there are two of the court's questions that I want to answer. One is, I think what the judge's question was aimed at was, did defense counsel ever specifically ask him, what's going on with your state case? What's going on, and how did he respond? I don't think that the record shows that, whether that happened or not, but I think we can infer that he couldn't have done that because it's hard to imagine that he would have asked that specific question and the defendant wouldn't have told him that he pleaded guilty, or if he had told him he pleaded guilty, that the defense counsel would have filed a sentencing memorandum that would have been so embarrassing. I mean, I'm not in a big firm. I'm just by myself, but if I were the big firm when it came down for sentencing, I would send some associate in to do it so I wouldn't have to face the judge having filed that sentencing memo. So that's the first point. The second question is, as to Your Honor's question about does Frank O'Reilly know that somebody's made this claim, Frank and I tried a long case in front of Judge Bolden together last summer, a while ago, but after I'd filed the appeal brief here, and I told him I was claiming that he was ineffective, but I can't say that I actually sat down and said you were ineffective because of this, this, this, and this. That's the answer. That's not part of the record, but that's what happens. We want to have due process for the lawyer. I hope you'll do it when I'm claimed to have been ineffective too, Judge. You'll get your due process when that's due, Mr. Donovan. Thank you very much. We'll reserve the decision.